Marie E. DARR, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

and

Cone Mills Corporation, Intervenor.

No. 85–1499.

United States Court of Appeals, District of Columbia Circuit.

Argued June 3, 1986.

Decided Sept. 26, 1986.

As Amended Oct. 2, 1986.

David M. Silberman, with whom Arthur M. Goldberg, Laurence Gold, Robert M. Weinberg and Mark D. Schneider, Washington, D.C., were on brief, for petitioner.

Judith Ann Dowd, Atty., N.L.R.B., of the Bar of the Com. of Va., Washington, D.C., pro hac vice by special leave of Court, for respondent. Elliott Moore, Deputy Associate Gen. Counsel and Daniel R. Pollitt, Atty., N.L.R.B., Washington, D.C., were on the brief, for respondent.

William R. McKibbon, Jr., Greenville, S.C., was on the brief, for intervenor, Cone Mills Corp.

Paul Alan Levy, Alan B. Morrison and Arthur L. Fox, II, Washington, D.C., were on brief, for amici curiae, Public Citizens and Teamsters for a Democratic Union, urging reversal.

Before GINSBURG, STARR and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Petitioner, Marie Darr, challenges a National Labor Relations Board decision to defer to an arbitrator's award denying her backpay as a remedy for an unlawful discharge. She argues that the arbitrator's findings establish that the discharge violated the National Labor Relations Act and that Board precedent requires a make-whole remedy. Because we find the Board's justification for deferring inadequate, we remand the case to the Board for further consideration (or explanation) of why deferral is appropriate.

## I.

This case arose following the discharge of three shop stewards by Cone Mills Corporation (the Company).[1] Darr, also a union steward, began circulating a petition protesting the discharges. The Company learned of the petition activity and shortly thereafter changed the break schedules of Darr and approximately seventy employees in various job classifications throughout the plant. Darr protested that the new break schedule interfered with her ability to perform her duties as a union steward. She continued to take her breaks according to the previous schedule, but the Company took no action to enforce the new break schedule until three days later when Darr's supervisor again advised her that she must follow the new schedule.

Later during the same shift, the Company Overseer confiscated the petition Darr was circulating. Darr and several other employees complained and repeatedly asked the Overseer to return the petition. In the course of these discussions, Darr also protested the break schedule and was again told that she must adhere to the new schedule. An hour and a half later, Darr and a group of employees went to the Overseer's office in an attempt to recover the petition. The other employees were on their regularly scheduled break, but Darr was not. She had worked past her scheduled break and taken a later break without permission so that she could accompany the other employees to discuss the confiscation of the petition. The Overseer again refused to return the petition. He then suspended Darr for flagrant refusal to follow her assigned break schedule and instructed her to go home. Darr, however, refused to leave the plant and returned to her job. The Overseer called in a Company security official and two police officers, but, upon consulting with the Department Head, subsequently decided to allow Darr to finish her shift.

Two days later, Darr met with the Department Head and other Company officials. They informed her that she was being discharged for altering her scheduled break without notifying her supervisor and for refusing to leave the plant when requested to do so by the Overseer. The following week, Darr filed a grievance con-

---

1. The Company's plant is organized by Local 391 of the Amalgamated Clothing and Textile Workers Union, AFL–CIO–CLC (the Union).

tending that her discharge violated the just cause provision of the collective bargaining agreement. Pursuant to the agreement's grievance procedure, the matter was referred to arbitration. Darr also filed an unfair labor practice charge with the NLRB, but the Board deferred its proceedings pending the outcome of the arbitration.

The arbitrator's opinion divided its analysis into two parts: the "contract issues" and the "NLRA issues." Interpreting the contract, the arbitrator held that petitioner was discharged without "just cause," finding that Darr's deviation from her break schedule did not interfere with Company operations and was "provoked" by the wrongful confiscation of the petition. Darr's refusal to leave the plant after being improperly suspended, however, was not excusable and in the arbitrator's opinion constituted insubordination. Commenting that the "grievant must recognize and accept managerial authority and use the grievance procedure to resolve private contract disputes," he concluded Darr should be reinstated, but not receive backpay for the nine month period since her discharge. Implicit in his determination was his conclusion that the Company had just cause to discipline petitioner but not to discharge her.

Turning to the NLRA issues, the arbitrator described the Act as creating "public rights" separate from the "private rights" derived from the labor agreement. He saw the NLRB and the courts as ultimately charged with the enforcement of public rights, and arbitrators as responsible for applying labor agreements to determine

private rights. Nevertheless, he proceeded to discuss the NLRA issue in a tentative fashion, concluding that because the "primary motive" of the company in taking disciplinary action was Darr's union activity, the discharge was a violation of Sections 8(a)(1) and 8(a)(3) of the Act[2] and therefore "the Board probably would issue a standard order—[including]—backpay." The arbitrator elliptically stated, that "the value of an Arbitration opinion in the determination of public rights has been and will continue to be a subject of debate among arbitrators, labor law attorneys and others." Leaving that issue to the NLRB and the courts, he did not purport to reconcile the two different bodies of applicable law, explaining that "the discussion of NLRA issues is presented as a response to the Union's arguments and is available for NLRB review."

The Administrative Law Judge declined to defer to the arbitrator's award, finding it "repugnant to the Act." He did not reach the general counsel's contention that the remedy, reinstatement without backpay, is per se repugnant, but rather held that because the discipline imposed on petitioner was triggered by her union activities and because those activities were "so inextricably intertwined with the alleged insubordination," no punishment was warranted. He thus concluded that the arbitrator's interpretation of the collective bargaining agreement as authorizing the employer to discipline petitioner was itself repugnant to the Act.

The Board rejected the ALJ's findings, concluding that the judge had substituted his judgment for that of the arbitrator's

---

**2.** Section 8(a)(1) provides:

It shall be an unfair labor practice for an employer ... to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed by [section 7].

29 U.S.C. § 158(a)(1) (1982).

Section 7, to which section 8(a)(1) refers, provides:

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the

purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities....

29 U.S.C. § 157 (1982).

Section 8(a)(3) provides:

It shall be an unfair labor practice for an employer ... by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization....

29 U.S.C. § 158(a)(3) (1982).

contrary to the principles of deference mandated by *Olin Corp.*, 268 N.L.R.B. 573 (1984) and *Spielberg Mfg. Co.*, 112 N.L.R.B. 1080 (1955). Under those precedents, the Board will defer to the arbitrator as long as his award is not "clearly repugnant" to the policies of the Act. The Board reasoned:

> It is the essential nature of the arbitration process to balance the competing claims of the parties by adjusting the equities involved to reach a harmonious result. That is what the parties have agreed upon as an acceptable resolution of their labor-management dispute.

The Board noted that although the arbitrator found no justifiable reason for discharge, he did find just cause for *some* discipline. Declaring that the failure of the arbitrator to provide a "make-whole remedy" (backpay) did not render his award clearly repugnant,[3] the Board concluded that deference was appropriate.

## II.

Petitioner presents essentially the same argument to us that the general counsel presented to the ALJ: that it is repugnant to the NLRA for the Board to defer to an arbitrator's award that provides an incomplete remedy that the Board itself would not fashion. To do so, according to petitioner, is to abridge employee rights bestowed by Congress. These statutory rights exist wholly apart from any additional rights an employee gains under a collective bargaining agreement. The NLRB responds that even the Board is not obliged under the NLRA to provide backpay along with reinstatement.

We think it plain, however, that under Board precedent if the Board had found what the arbitrator did, it would have ordered make-whole relief—backpay as well as reinstatement. Although Section 10(c) of the Act (29 U.S.C. 160(c)) gives the

Board some discretion to determine when backpay is an appropriate remedy,[4] the need to compensate a wrongfully discharged employee and the importance of deterring future wrongful conduct by the employer generally require that the Board award a make-whole remedy. *See Republic Steel Corp. v. NLRB*, 311 U.S. 7, 13, 61 S.Ct. 77, 80, 85 L.Ed. 6 (1940); *Phelps Dodge Corp. v. Labor Board*, 313 U.S. 177, 194, 61 S.Ct. 845, 852, 85 L.Ed. 1271 (1941). Indeed, "the Board, since its inception, has awarded backpay as a matter of course." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 419–20, 95 S.Ct. 2362, 2372, 2373, 45 L.Ed.2d 280 (1975). In support of its position, the Board points to exceptional situations where it has determined that an award of backpay will not further the policies of the Act. For example, the Board has denied reinstatement and backpay where an unlawfully discharged employee subsequently engages in violent criminal conduct. *See, e.g., Renfro Hosiery Mills, Inc.*, 122 N.L.R.B. 929 (1959) (employee assaulted supervisor); *NLRB v. Bin-Director Co.*, 356 F.2d 210 (6th Cir.1966) (employee threatened supervisors with mayhem). Similarly, relief has been denied to employees who committed previous illegal or dishonest acts that would have independently led to their discharge. *See, e.g., Uniform Rental Service, Inc.*, 161 N.L.R.B. 187, 190 (1966), *rev'd on other grounds*, 398 F.2d 812 (6th Cir.1968) (employee pilfered letter from employer's private office); *Offner Electronics, Inc.*, 134 N.L.R.B. 1064, 1077 (1961) (employee attempted to steal documents); *Keco Industries, Inc.*, 121 N.L.R.B. 1213, 1227 (1958) (employee had prior criminal convictions). But in all the cases of denial of backpay cited by the Board, *reinstatement was also denied.* Here, by contrast, the arbitrator ordered Darr reinstated, finding that her insubordination in

---

**3.** The Board relied for that proposition on *Combustion Engineering, Inc.*, 272 N.L.R.B. 215 (1984).

**4.** Under section 10(c), the Board is authorized to order an employer to cease and desist an unfair

labor practice and "to take such affirmative action including reinstatement of employees with or without backpay, as will effectuate the policies of this [Act]." 29 U.S.C. § 160(c) (1982).

response to her illegal suspension did not warrant her discharge.[5]

The question for us, then, is whether the Board may defer to an arbitrator's award that is doctrinally different from Board precedent. The answer may well depend on why the Board proposes to defer. The Board's deferral policy, beginning with *Spielberg*, 112 N.L.R.B. 1080 (1955), and through its various twists and turns,[6] has seemed to interweave at least four separate theories supporting deferral. The first is a collateral estoppel theory—the notion that the NLRA issue is sufficiently close to the contract question as to have been fully litigated; the second is that the Board applies a limited scope of review as if it were an appellate body reviewing an arbitrator's application of the NLRA (presumably as incorporated into the agreement); the third involves deference to a contract interpretation upon which the application of the NLRA depends; and the fourth is the theory that the parties to a collective bargaining agreement have waived the statutory rights that the Board is empowered to enforce and instead rely on a different body of contract law.[7]

We cannot clearly discern from the Board's decision in the case why it deferred to the arbitrator's award; its decision (as does the *Olin* case on which it relies) appears based on an admixture of theories. The Board's comment that the arbitrator's balancing of equities "is what the parties have agreed upon" seems to partake of the fourth theory that the parties agreed to a contractual standard governing discipline that is different—providing in some cases less protection and in some greater—than that afforded by the NLRA. But the Board does not explicitly set forth a waiver theory or even consider whether a union can legitimately waive an individual employee's rights under Section 8(a)(1) and (3) of the Act, and if so whether the agreement in this case has in fact done so.[8] Nor

---

**5.** Even assuming the statute authorizes the Board to withhold backpay, the Board would have to justify such a change in policy. *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual*, 463 U.S. 29, 42, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983).

**6.** In chronological order, see *Raytheon Co.*, 140 N.L.R.B. 883, 887 (1963) (unfair labor practice issue must have been "fully and fairly litigated" at arbitration level to justify deferral by the Board); *Electronics Reproduction Service Corp.*, 213 N.L.R.B. 758, 764 (1974) (deferring to arbitral findings unless "special circumstances" precluded a "full and fair opportunity" to present evidence of an unfair labor practice); *Suburban Motor Freight, Inc.*, 247 N.L.R.B. 146 (1980) (no deference to an arbitration award that "bears no indication that the arbitrator ruled on the statutory issue"); *Olin Corp.*, 268 N.L.R.B. 573, 574 (1984) (deferral appropriate if contractual issue before arbitrator is "factually parallel" to the statutory issue and facts presented were generally relevant to resolving that issue).

**7.** We have on several occasions affirmed the Board's application of its deferral doctrines. Nevertheless, our cases have not been uniform in their analytical approach, and they do not provide clear directions for the instant case. *See, e.g., Bakery, Confectionery and Tobacco Workers v. N.L.R.B.*, 730 F.2d 812, 814–16 (D.C. Cir.1984) (deferral appropriate where statutory violation turns on arbitrator's interpretation of a collective bargaining agreement and arbitrator's award not "clearly repugnant" to the Act);

*American Freight System, Inc. v. N.L.R.B.*, 722 F.2d 828, 832–34 (D.C.Cir.1983) (Board required to defer when contract waived statutory right and arbitrator fully considered and decided contractual issue); *Bloom v. N.L.R.B.*, 603 F.2d 1015, 1018–21 (D.C.Cir.1979) (deferral appropriate where both contractual and statutory issues hinged on same factual considerations and where record justified inference that the arbitration panel decided statutory issue).

**8.** Petitioner argues implicitly, and amici Public Citizen and Teamsters for a Democratic Union, explicitly, that a waiver theory could not justify the Board's deference to this arbitrator's award. Although the Supreme Court has held that a union cannot waive an employee's rights under the FLSA, *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 740, 101 S.Ct. 1437, 1444, 1445, 67 L.Ed.2d 641 (1981), or Title VII of the Civil Rights Act of 1964, *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51, 94 S.Ct. 1011, 1021, 39 L.Ed.2d 147 (1974), it has treated rights under the NLRA differently. *See Metropolitan Edison Co. v. N.L.R.B.*, 460 U.S. 693, 705–08, 103 S.Ct. 1467, 1475, 1477, 75 L.Ed.2d 387 (1983); *Mastro Plastics Corp. v. N.L.R.B.*, 350 U.S. 270, 280, 76 S.Ct. 349, 356, 357, 100 L.Ed. 309 (1956). *See generally* Edwards, *Deferral to Arbitration and Waiver of the Duty to Bargain: A Possible Way Out of Everlasting Confusion at the NLRB*, 46 Ohio St.L.J. 23 (1985). We reserve the question whether a union can waive employees' NLRA protection against dis-

does the Board explain whether the arbitrator's interpretation of the agreement permits a finding of waiver even in the absence of an express waiver in the agreement itself. *Cf. Metropolitan Edison,* 460 U.S. at 709 n. 13, 103 S.Ct. at 1477 n. 13 (arbitrator's decision may be relevant in establishing waiver of NLRA rights).

If instead the Board's decision was based on a theory of deferral predicated on the premise that Darr's NLRA rights were litigated before the arbitrator, the Board must explain how the statutory claim merged into the contract claim when the arbitrator himself treated the NLRA cause of action as outside his jurisdiction. It is also not at all clear why the Board concludes that an arbitrator can gain authority to apply the NLRA to a grievance under a collective bargaining agreement. Does the Board view section 203(d) of the Act,[9] which declares that private resolution of contract issues is preferred, as granting that authority to an arbitrator? If so, how does it explain Section 10(a) of the Act,[10] which provides that the Board's *power* to prevent unfair labor practices "shall not be affected by any other means of adjustment"? And how does an arbitrator differ from a state court, which does not have authority to interpret or apply the NLRA? *See, e.g., San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 241–45, 79 S.Ct. 773, 777–779, 3 L.Ed.2d 775 (1959). If an arbitrator holds that the parties agreed by their collective bargaining contract to incorporate the NLRA by reference (rather than waive it) it might be thought that the arbitrator gains authority to apply the Act. But if the Board proceeds under that theory, it would seem it must, at minimum, determine that the arbitrator has in fact so held.

Finally, does the scope of the Board's reservation of authority to overturn an arbitrator's award that is "clearly repugnant to the Act," depend on its theory of deferral? Would the Board, for instance, look more closely at the award if the arbitrator is applying the NLRA, than it would if it concluded that the union has waived its members' rights under the NLRA (assuming there is no allegation of a breach of fair representation)? *See Kohls v. N.L.R.B.,* 629 F.2d 173, 178–79 (D.C.Cir.1980) (Board has no authority to resolve contractual disputes unrelated to an unfair labor practice).

We have profound doubts that the Board may defer to an arbitrator's award merely because the award is roughly analogous to that which the Board would grant—a sort of "Kentucky Windage" approach—without explicitly articulating its view of the interrelationship between the law of a particular collective bargaining agreement and the NLRA.[11] But consistent with the well-established principles articulated in *SEC v. Chenery Corp.,* 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed.2d 626 (1943), we must confine our "review to a judgment upon the validity of the grounds upon which the Commission itself based its action." *Id.* at 88, 63 S.Ct. at 459. Ultimately, our review will depend on how the Board articulates not only its general theory of deference, but how it applies it in a particular case. We therefore remand the case to the NLRB for further consideration (or explanation) of its reasons for deferring to the arbitrator's award.

*It is so ordered.*

---

crimination based on the employee's union activity in return for different collective bargaining rights. Since the Board has not explicitly adopted that theory, it would be premature to express our view on the issue. And, of course, it follows that we similarly express no opinion on whether this contract contained such a waiver.

**9.** 29 U.S.C. § 173(d) (1982).

**10.** 29 U.S.C. § 160(a) (1982).

**11.** We realize the General Counsel might well adopt such an approach in determining whether to issue a complaint, but her discretion is virtually unreviewable.