16 F.3d 1291
 305 U.S.App.D.C. 80
 The HELEN MINING COMPANY, Petitioner,
v.
FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION, and
Secretary of Labor, Mine Safety and Health
Administration, on behalf of Joseph A.
Smith, Respondents.
 No. 92-1599.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Feb. 15, 1994.
Decided March 4, 1994.
 
 Petition for Review of an Order of the Federal Mine Safety and Health Review Commission.
 J. Michael Klutch, Pittsburgh, PA, argued the cause and filed the briefs for petitioner. David J. Laurent and Thomas A. Smock, Pittsburgh, PA, entered an appearance.
 Tana M. Adde, Atty., U.S. Dept. of Labor, Washington, DC, argued the cause for respondents. With her on the brief was W. Christian Schumann, Counsel, U.S. Dept. of Labor, Washington, DC. L. Joseph Ferrara, Washington, DC, entered an appearance.
 Before: MIKVA, Chief Judge, EDWARDS, and SILBERMAN, Circuit Judges.
 Opinion PER CURIAM.
 
 PER CURIAM:
 
 1
 Petitioner seeks review of a Commission decision that it had twice illegally discharged Joseph Smith in retaliation for exercising his statutory right to file mine safety complaints. Since ample evidence in the record supports the ALJ's factual findings--which depended on a number of credibility judgments--we deny the petition.I.
 
 
 2
 Joseph Smith is chairman of the union safety committee at petitioner's Homer City Mine, a position that requires him to file grievances continually on behalf of his co-workers. Although employed as a longwall shearer operator, Smith is also a state-certified mine inspector ("fireboss" in the mining vernacular). Although firebossing is generally performed by managerial supervisors, qualified employees are often asked to fireboss on an as-needed basis since the mine cannot operate without an inspector.
 
 
 3
 On December 19, 1990, the mine management asked Smith to fireboss his shift. After some discussion regarding two hours of overtime Smith had expected that day, he began firebossing. During the shift, Smith called the mine foreman to say that he would have to shut down one of the mining belts because of a harmful accumulation of combustible coal dust. This is a drastic measure; since all the belts ran in tandem, turning one off means shutting down the mine. The shift foreman said that Smith should not shut down the belt, an instruction that Smith ignored. Smith turned off the belt and began shoveling coal to clean up the affected area--a remedy that may have been counterproductive since shoveling creates more coal dust. The next day Smith was fired for insubordination. An arbitrator, acting pursuant to the collective bargaining agreement, later agreed with the company that Smith had ignored a direct order, but reduced Smith's punishment from discharge to a 60-day suspension.
 
 
 4
 Smith came back to the mine after the suspension and continued his duties as safety committee chairman. In June 1991, Smith filed three safety grievances, each resulting in citations against the mine from federal inspectors. The last of the violations reported by Smith, on June 27, 1991, was serious enough to compel inspectors to issue an Imminent Danger Withdrawal Order for sections of the mine. On July 2, 1991, mine management again asked Smith to fireboss the shift. Smith declined to fireboss because he had the flu. After some discussion, Smith asked whether his supervisor was issuing a direct order, to which came the reply that if Smith was still at the mine at 12:01 A.M. when the shift started, then the assignment would be a direct order. Smith then said he would take an "illegal" day and walked out of the mine before the shift started. The next day, Smith obtained a statement from his doctor verifying his illness, but was informed that he had been fired for insubordination. Another arbitrator determined that the discharge decision was not a violation of the collective bargaining agreement.
 
 
 5
 The Department of Labor filed retaliatory discharge complaints under Federal Mine Safety and Health Act section 105(c), 30 U.S.C. Sec. 815(c), on behalf of Smith based on the two incidents. The ALJ held that Smith had established the prima facie case that he was discharged on both occasions for safety-related activities protected by the Act. The ALJ also rejected petitioner's affirmative defense that Smith was fired for insubordination--a justification unrelated to his protected conduct--because Smith had not been issued a direct order on either occasion. The ALJ found that on December 20, 1990, the mine supervisor had merely discussed possible abatement actions with Smith and had not issued a "direct work order" using those magic words, which in the mine's practice would have alerted Smith to a possible insubordination charge. And Smith was not given a direct work order to fireboss on July 2, 1991, only a conditional one that would become operative at the start of the shift. The ALJ noted that much of his decision rested on a credibility judgment between Smith and the mine management, and that he did not defer to the arbitrators' decisions since they operated under the collective bargaining agreement, not according to the Act's antidiscrimination mandate. The Commission adopted the ALJ's decision without comment.
 
 II.
 
 6
 Petitioner does not claim that the ALJ gave inadequate weight to the arbitrators' interpretation of the collective bargaining agreement, an issue that the National Labor Relations Board has long grappled with in analogous contexts. See Plumbers & Pipefitters Union Local No. 520 v. NLRB, 955 F.2d 744, 755-56 (D.C.Cir.), cert. denied --- U.S. ----, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992); Darr v. NLRB, 801 F.2d 1404, 1408-09 (D.C.Cir.1986). Petitioner, instead, argues only that substantial evidence in the record does not support the ALJ's rejection of the affirmative defense that Smith was fired for insubordination. We have little trouble dismissing this argument given the high level of deference we accord to such factual determinations. See Chaney Creek Coal Corp. v. Federal Mine Safety & Health Review Comm'n, 866 F.2d 1424, 1431 (D.C.Cir.1989); Donovan ex rel. Chacon v. Phelps Dodge Corp., 709 F.2d 86, 90-96 (D.C.Cir.1983).
 
 
 7
 Petitioner's challenge with respect to the December 20, 1990, discharge is rather facile. It is urged that Smith was fired not for protected activity but because he ignored a direct order from his supervisor not to turn off the conveyor belt. Even leaving aside the fact that the supervisor never issued a direct order (which the ALJ found important), the supervisor did not have authority to issue such an order. As the mine inspector, Smith was the person responsible for identifying hazards and responding to them--a conclusion supported by the state safety commission's report on the incident, which the ALJ noticed in his opinion.[1]
 
 
 8
 Petitioner's argument concerning the July 2, 1991, discharge is equally unavailing. We are asked to accept the shift foreman's testimony that he had ordered Smith to fireboss, and thus to ignore the ALJ's factual finding that the foreman had not issued a direct order--only a conditional work assignment that would become an order at 12:01 A.M., when the shift started. However one characterizes the instruction, petitioner's argument fails because Smith had the right--under standard mine practice, as the ALJ found--to abstain from work by taking a so-called "illegal" absence. Petitioner inexplicably argues that Smith's insubordinate act (ignoring a direct order) is the only relevant issue, not whether his absence was permissible. But Smith was not insubordinate if he could nevertheless ignore the work order, conditional or otherwise, by taking the day off.
 
 
 9
 Perhaps recognizing the logical flaw, petitioner argues further that insufficient evidence exists to support the ALJ's finding that it was standard mine practice to take an "illegal" day off, claiming that the collective bargaining agreement did not permit such absences. Petitioner offers no textual or logical support for its argument, asserting only that the interpretation of the agreement would lead to a "rather strange practice." Strange or not, Smith and several co-workers testified that they had previously taken unexcused absences from the mine, which are sanctionable under the collective bargaining agreement only if they occur on two consecutive days. The ALJ thus reasonably concluded that Smith had acted according to accepted procedures when he declined his work assignment.
 
 
 10
 Petitioner's case essentially reduces to its complaint that the ALJ rejected the testimony of management witnesses as to the facts in question and their version of the work rules at the mine. As the ALJ noted, the case turns on the relative credibility of the employees and their supervisors, and we are not in a position to question his judgment of who is more credible.
 
 
 11
 * * * * * *
 
 
 12
 We therefore deny the petition for review.
 
 
 13
 So Ordered.
 
 
 
 [1]
 Petitioner's argument that the ALJ erred in giving preclusive effect to the state report is specious, since the ALJ referred to the report only to support his own conclusion that Smith had acted reasonably