**BURNS INTERNATIONAL SECURITY SERVICES, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 97–1638.

United States Court of Appeals, District of Columbia Circuit.

Argued May 4, 1998.

Decided June 12, 1998.

Thomas J. Piskorski, argued the cause and filed the briefs, for petitioner.

Robert J. Englehart, Attorney, National Labor Relations Board, argued the cause, for respondent, with whom Linda Sher, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, and Frederick C. Havard, Supervisory Attorney, were on the brief. Frederick L. Cornnell, Jr., Attorney, entered an appearance.

Before: EDWARDS, Chief Judge, SILBERMAN and SENTELLE, Circuit Judges.

HARRY T. EDWARDS, Chief Judge:

This case presents the narrow question whether, under established case law, the National Labor Relations Board ("NLRB" or "Board"), may decide a refusal to bargain unfair labor practice claim, arising under sections 8(a)(5) and 8(a)(1) of the National Labor Relations Act ("NLRA" or "Act"), 29 U.S.C. §§ 158(a)(5), (1), where an employer acts pursuant to a viable claim of right under a collective bargaining agreement ("CBA"), the matter in dispute is covered by the arbitration clause in the CBA, and the employer unconditionally seeks submission of the dispute to arbitration. On the facts at hand, the Board should have deferred to arbitration. Because the Board gave no good reason for

failing to follow well-established case law, we grant the employer's petition for review.

## I. BACKGROUND

During the time period relevant to this appeal, Burns International Security Services ("Burns" or "employer") provided security guard services at a nuclear power plant owned by Yankee Atomic Electric Services in Rowe, Massachusetts ("Yankee Rowe"). Approximately 20 Burns employees at Yankee Rowe were represented by a union affiliated with United Government Security Officers of America ("Union"). Burns and the Union had a CBA that ran from January 23, 1991, to December 10, 1993.

Under the "Holidays" clause (article XV) of the CBA, the parties had agreed that holiday pay would be paid to "regular full-time employees" who completed the last regularly scheduled work day before a given holiday and the first regularly scheduled work day after such holiday.[1] For a number of years, however, Burns had granted holiday pay to employees who were out on workers' compensation leave, i.e., notwithstanding the fact that such employees had not actually worked the days immediately preceding and immediately following the holiday. In late 1993, Burns discovered that it was not required by state law to give holiday pay to employees on workers' compensation. Subsequently, Burns refused to pay three unit employees, who were then receiving workers' compensation, for the 1993 Thanksgiving holiday. On December 23, 1993, Burns sent a letter, dated December 10, 1993, to the affected employees, notifying them of the change in policy. In early January 1994, the Union's president learned about this change when one of the three affected employees showed him a copy of Burns' letter. Neither the Union nor any of the affected employees sought to grieve the issue under the CBA.

Meanwhile, in late 1993 and during the first few months of 1994, Burns and the Union attempted to negotiate a new contract to replace the CBA which had expired on December 10, 1993. These negotiating efforts faltered, however, and, on March 9, 1994, the Union called a strike. The striking employees had marked their pro-strike ballots to show that they based their votes, at least in part, on alleged unfair labor practices committed by Burns, including "unilateral changes." J.A. 13. On March 30, 1994, the Union voted to end the strike, and, on April 1, 1994, Burns received unconditional offers to return to work from all the striking employees. Burns did not immediately reinstate the employees, however, because by then the company had hired replacements.

On April 21, 1994, the Union filed a charge with the NLRB, and a complaint issued, alleging that Burns committed unfair labor practices by changing the practice covering holiday pay for employees on workers' compensation and by refusing to reinstate the strikers. In a decision issued on September 30, 1996, an administrative law judge ("ALJ") found that Burns had failed "to bargain collectively" with the Union pursuant to sections 8(a)(5) and 8(d) of the NLRA, 29 U.S.C. §§ 158(a)(5), (d), and thereby committed an unfair labor practice under sections 8(a)(5) and 8(a)(1) of the Act, by unilaterally discontinuing the holiday pay. The ALJ also found that Burns' discontinuance of holiday pay was a "contributing" cause of the strike and, therefore, Burns violated sections 8(a)(3) and 8(a)(1) of the Act, 29 U.S.C. §§ 158(a)(3), (1), by refusing to reinstate the strikers immediately upon their unconditional offer to return to work on April 1, 1994. See J.A. 14.

The ALJ rejected Burns' arguments that the CBA authorized the company's holiday pay action. The judge also dismissed the contention that the Union had waived its right to bargain over holiday pay for employees on workers' compensation through a "Waiver" clause (article XXVII), also known

---

1. The Holidays clause states, in pertinent part:

A regular full-time employee who has successfully completed his six (6) month probationary period [is entitled to holiday pay].

. . . .

In order to receive [holiday pay], the employee must fully complete his last regularly scheduled work day before the holiday itself and first regularly scheduled work day after the aforesaid holidays [sic].

Joint Appendix ("J.A.") 690–91.

as a "zipper" clause, contained in the CBA.[2]

Finally, the ALJ rejected Burns' contention that the issue of holiday pay was subject to arbitration. The judge first questioned whether the holiday pay dispute "was even arbitrable," on the assumption that holiday pay for employees on workers' compensation was an extra-contractual benefit. J.A. 15. Without resolving this point, the ALJ held that the dispute need not be submitted to arbitration, because Burns had notified the Union by letter dated December 27, 1993, that it did not consider itself subject to binding arbitration without a new collective bargaining agreement. See J.A. 15–16.

The Board adopted the analysis and recommendations of the ALJ with minor modifications. See Burns Int'l Security Servs., 324 NLRB No. 89, 1997 WL 605635 (1997). ("Order"), reprinted in J.A. 7–17. Although Burns again claimed that the dispute should be submitted to arbitration, the Board did not specifically address the arbitration argument. The Board ordered Burns to make whole all employees who were wrongly denied holiday pay and to reinstate all striking employees who had not yet been returned to their jobs. This petition for review and cross-application for enforcement of the Board's order followed.

## II. DISCUSSION

 It is well settled that when an employer defends against a refusal to bargain charge by contending that its actions were authorized by the collective bargaining agreement, the refusal to bargain charge presents an issue of contract interpretation. See, e.g., Utility Workers Union v. NLRB, 39 F.3d 1210, 1215 (D.C.Cir.1994). In Collyer Insulated Wire, 192 NLRB 837 (1971), the Board established the general rule, repeatedly affirmed by this court, that it will refrain

from initiating an unfair labor practice proceeding if the collective bargaining agreement provides for arbitration as the method of resolving disputes over the meaning of the agreement. See McDonnell Douglas Corp. v. NLRB, 59 F.3d 230, 233–34 (D.C.Cir.1995); NLRB v. United States Postal Service, 8 F.3d 832, 837 (D.C.Cir.1993); Hammontree v. NLRB, 925 F.2d 1486, 1490–91 (D.C.Cir. 1991) (en banc).

 Under Collyer and its progeny, there is little doubt that the Board should have deferred the dispute over the holiday pay action to arbitration. Burns contends that two provisions of the CBA read together authorized its decision to eliminate holiday pay for employees on workers' compensation. Burns points, first, to the Holidays clause, which explicitly provides that holiday pay will be given only to "regular employees" who meet certain other requirements with respect to the particular holiday for which pay is sought. Burns also relies on the Management Rights clause (article II), which provides, in pertinent part:

This Agreement shall not be construed to infringe or impair any of the normal management rights of the Employer which are not inconsistent with the provisions of this Agreement. Included among management rights ... is the right to change existing business practices.... The right of the Employer to make rules and regulations not in conflict with this Agreement as it may from time to time, deem best for the purpose of maintaining order, safety and/or effective operations, and after advance notice thereof to the Union and to the employees, to require compliance therewith by employees is recognized.

J.A. 9–10 n.3; J.A. 665–66. An arbitrator plausibly might conclude from these provi-

2. The Waiver or zipper clause states:
The parties acknowledge that during the negotiations which resulted in this Agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining, and that the understanding and Agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Agreement. Therefore, the Employer and the Union, for the

life of this Agreement, each voluntarily and unqualifiedly waives the right and each agrees that the other shall not be obligated to bargain collectively with respect to any subject or matter not specifically referred to or covered in this Agreement, even though such subjects or matters may not have been within the knowledge or contemplation of either or both of the parties at the time they negotiated or signed this Agreement.
J.A. 9; J.A. 701–02.

sions that Burns, upon discovering in late 1993 that state law did not require it to pay employees on workers' compensation for holidays, was authorized by the CBA to cease making those payments. The Union, in turn, could claim that the Holidays clause was not inconsistent with the employer's holiday pay practices and so the employer should be bound to continue established past practices. In short, the claim that Burns had no right to eliminate holiday pay for certain employees undoubtedly presents a dispute over the proper interpretation of the CBA.

Burns also argues that the holiday pay issue is one that the company and the Union agreed to make subject to grievance and arbitration procedures under the terms of the CBA. *See* Br. of Petitioner at 7. Article VII of the CBA, entitled "Grievance and Arbitration Procedure," sets forth a multistep procedure for resolving a dispute between the employer and an employee or the Union regarding "the meaning or application of" the CBA. J.A. 670. The final step of the procedure is arbitration, with the arbitrator's award being "final and binding." J.A. 674. The Board does not dispute, and we agree, that a disagreement over the meaning of the Holidays and Management Rights clauses is subject to arbitration under the CBA. *See AT&T Technologies v. Communications Workers*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (arbitration clause in collective bargaining agreement gives rise to "presumption of arbitrability") (citing *United Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)); *Collyer*, 192 N.L.R.B. at 842.

Finally, it is clear that Burns raised the issue of arbitration before the Board. In its amended answer to the General Counsel's complaint, Burns stated as an alternative defense that: "In the case of the unfair labor practices alleged [arising out of the discontinuance of holiday pay], the Union failed to pursue a grievance. *The employer remains willing to waive any procedural barriers to arbitration of said dispute, and the matter should be deferred to arbitration.*" Amended Answer to Complaint (Sept. 8, 1995), *reprinted in* J.A. 597 (emphasis added). Thus, this case is unlike *Postal Service*, in which the employer never claimed that the Board

should have deferred to arbitration. *See Postal Service*, 8 F.3d at 837. In those circumstances, we held that the Board had authority to interpret the relevant contract for purposes of deciding the unfair labor practice charge. *See id.* Here, by contrast, Burns argued to the ALJ, to the Board, and to this court, that the Board should defer, because the holiday pay issue raised an arbitrable dispute. Given the contractual nature of the holiday pay dispute and Burns' unambiguous and unconditional request for arbitration, we agree that the Board should have deferred.

The Board, in rejecting Burns' defenses, appeared to adopt the theory that the issue of holiday pay for employees on workers' compensation was not "contained in" the CBA within the meaning of section 8(d) of the Act, 29 U.S.C. § 158(d). The Board thought that, because Burns had developed a "past practice" of granting holiday pay that was arguably separate from the explicit terms of the CBA, the company could not change the existing holiday pay arrangement without agreement from the Union. In other words, the Board thought that holiday pay for employees on workers' compensation was outside the scope of the CBA, so there was no contractual term that required interpretation in arbitration.

We reject the Board's theory. We first note, however, that in argument before this court, Board counsel confused the issue by suggesting that the disputed holiday pay practice was an "implied term" of the CBA. If, as Board counsel suggested, the holiday pay practice was an implied term, then undoubtedly it was "contained in" the CBA and the dispute over its meaning should have been submitted to arbitration. *See generally Consolidated Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 311, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989) ("[C]ollective bargaining agreements may include implied as well as express terms."); *Bonnell/Tredegar Indus., Inc. v. NLRB*, 46 F.3d 339, 344 (4th Cir.1995) ("An employer's established past practice can become an implied term of a collective bargaining agreement.") (citing cases); ELKOURI & ELKOURI, HOW ARBITRATION WORKS 632 (5th Ed.1997) (surveying circumstances in which arbitra-

tors give employer custom "'binding practice' effect as an implied term of the agreement").

In any event, the Board's analysis, predicated on the assumption that the discontinued holiday pay was extra-contractual, is patently flawed. The relevant inquiry in this case is whether Burns acted on a viable claim of right under the parties' CBA in eliminating the holiday pay practice. So long as the employer plausibly claims contractual justification for its actions under the express or implied terms of the CBA, and the matter in dispute is subject to arbitration, then the Board should leave the parties to their contract remedies unless the employer refuses to go to arbitration. *See* Harry T. Edwards, *Deferral to Arbitration and Waiver of the Duty to Bargain; A Possible Way Out of Everlasting Confusion at the NLRB,* 46 OHIO ST. L.J. 23, 32–35 (1985). This is not a case in which the employer, relying solely on a zipper clause that did no more than waive the duty to bargain, sought to take unilateral action with respect to a mandatory subject of bargaining not contained in the CBA. *See United Auto. Workers v. NLRB,* 765 F.2d 175, 183 (D.C.Cir.1985) ("Although a zipper clause may waive the obligation to bargain over all mandatory subjects during the term of an agreement, it surely does not waive the union's right to object to an employer's taking unilateral action with respect to such subjects."). Here, the employer plausibly relied on the Holidays and Management Rights provisions in claiming an issue proper for arbitration.

The Board also thought it could resolve the failure-to-bargain claim because of Burns' letter to the Union, dated December 27, 1993, which stated, "absent a new agreement, Burns is not bound by and would not recognize binding arbitration for any disputes which may arise in the grievance procedure." Letter from Guy R. Thomas, Labor Relations Manager, Burns International Security Services, to James A. Vissar, President, International Union, United Government Security Officers of America (Dec. 27, 1993), J.A. 715; *see Order,* J.A. 15–16. The Board's position on this point is meritless. It is undisputed that Burns implemented its new holiday pay

policy in November 1993, *before* the CBA expired. Thus, Burns' letter, written *after* expiration of the CBA, does not support the Board's conclusion that Burns had "disavowed its obligation to process" a grievance based on the holiday pay dispute pursuant to article VII of the CBA. *Order,* at J.A. 16. The letter only served to notify the Union that Burns would not recognize arbitration for issues arising after the expiration of the CBA, as long as there was no replacement CBA. Indeed, as the ALJ and Board found, the Union officials themselves informed the membership at the strike-vote meeting on March 9, 1994, that Burns "had notified the Union in December that it would not arbitrate any grievances *that arose after the contract expired.*" *Id.* at J.A. 13 (emphasis added).

In short, there is nothing in the record to suggest, nor did the ALJ or the Board ever claim, that Burns ever refused to arbitrate an issue that arose during the course of the CBA. Indeed, had the Union sought to grieve the holiday pay action pursuant to the expired CBA, it is doubtful Burns would have had a plausible legal basis to refuse such a request. *See Litton Financial Printing Div. v. NLRB,* 501 U.S. 190, 205–06, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991) ("A postexpiration grievance can be said to arise under the contract ... where it involves facts and occurrences that arose before expiration. ... "). *Goya Foods, Inc.,* 238 N.L.R.B. 1465, 1978 WL 8179 (1978), says nothing to the contrary (as the ALJ seemed to think), nor does it support the Board's suggestion that *ongoing* arbitration proceedings are a prerequisite to the enforcement of a CBA's arbitration clause.

Under *Collyer* and its progeny, the Board was required to defer to arbitration, plain and simple. The Board has not pointed to any factual circumstances which, under established case law, would weigh against a decision to defer to arbitration. *See Hammontree,* 925 F.2d at 1490 (suggesting conditions where deferral to arbitration may be inappropriate) (citing *Collyer,* 192 N.L.R.B. at 842). Indeed, arbitration is ideally suited to resolving the type of contractual dispute decided by the Board in this case.

Because the Board erred in resolving the failure-to-bargain charge, there is no basis for the Board's conclusions that the strike by employees at Yankee Rowe was an unfair labor practice strike, and that Burns violated sections 8(a)(3) and 8(a)(1) by failing to immediately reinstate the strikers upon their unconditional offer to return to work. Thus, we need not address the question whether substantial evidence supports the Board's finding that the holiday pay dispute was a contributing cause of the strike.

## III. CONCLUSION

For the foregoing reasons, we grant Burns' petition for review and deny the Board's cross-application for enforcement.