KAREN LeCRAFT HENDERSON,
Circuit Judge, concurring in part and concurring in the judgment:
I join Judge Kavanaugh in granting Verizon New England’s petition for review but write separately to express my doubt about the arbitration deferral standard of *489 the National Labor Relations Board (Board) as described in the majority opinion. For several reasons, I do not agree that “what comes after the ‘i.e.’ describes a separate way to overturn the arbitrator’s decision” instead of “simply an example or another way to describe what comes before.” Maj Op. 486. To begin with, this construction deviates from the term’s ordinary definition — “i.e.” is short for the Latin id est, meaning “that is”; not “or” or “alternatively” as my colleagues apparently have it. Second, their construction does not comport with the court’s ordinary usage, by which the term restates what is said before. See, e.g., Puckett v. United States, 556 U.S. 129, 135, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009) (“intentionally relinquished or abandoned, i.e., affirmatively waived”); United States v. Cotton, 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (“jurisdiction ..., i.e., the courts’ statutory or constitutional power to adjudicate the case” (internal quotations and emphasis omitted)). Third — and, in my view, most salient — we should not give our own interpretation of what Board “orders do not say” when the Agency itself has not subsequently done so. Phila. Gas Works v. FERC, 989 F.2d 1246, 1250-51 (D.C. Cir. 1993) (“FERC, not we (or FERC’s appellate lawyers), must” perform task); see also SEC v. Chenery Corp., 318 U.S. 80, 88, 63 S.Ct. 454, 87 L.Ed. 626 (1943). Tellingly, the majority opinion cites no Board authority for its interpretation of the Board’s use of “palpably wrong.” I submit that we should ask only whether the arbitrator’s decision is susceptible of an interpretation consistent with the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151 et seq. The right to picket is a waivable right and we have no independent reason to think waiver inconsistent with the NLRA; the arbitrator’s conclusion that it was waived, then, passes muster and our inquiry should be at an end.
But more importantly, my colleagues ignore the two-ton elephant in the room, namely, what arbitration deferral standard the Board may lawfully apply. May the Board, for instance, reject the arbitrator’s interpretation of a collective bargaining agreement (CBA) because the Board would not have reached the same conclusion in the first instance? In the past the Board said no, recognizing “that national policy strongly favors the voluntary arbitration of disputes.” Olin Corp., 268 N.L.R.B. 573, 574 (1984). Accordingly, it rejected only “palpably wrong” or “clearly repugnant” arbitral interpretations of a CBA. Id. (ALJ’s failure to defer to arbitration award “frustrate[d] the declared purpose of [Board policy] to recognize the arbitration process as an important aspect of the national labor policy favoring private resolution of labor disputes.”).
This standard — although nebulous-tracks our own standard of review of arbitration decisions. See Maj. Op. 487 & n. 3 (“The Board’s ‘palpably wrong’ standard is similar to (although perhaps a notch less deferential to the arbitrator) the extraordinarily deferential standard” we apply). When the court is the forum of first review, it enforces the arbitrator’s CBA interpretation “so long as the arbitrator purports to be interpreting the contract rather than dispensing ‘his own brand of industrial justice.’ ” Utility Workers Union of Am. v. NLRB, 39 F.3d 1210, 1216 (D.C. Cir. 1994) (quoting United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)). Under that review, “whether the arbitrator erred — or even seriously erred — in interpreting the contract” is irrelevant. Nat’l Postal Mail Handlers Union v. Am. Postal Workers Union, 589 F.3d 437, 441 (D.C. Cir. 2009). See also Nat’l Football League Mgmt. Council v. Nat’l Football League Players Ass’n, 820 *490 F.3d 527, 536-37 (2d Cir. 2016) (if arbitrator “misinterprets the parties’ agreement,” court cannot “substitute [its] own” interpretation (citing United Paperworkers Int’l Union v. Misco, Inc., 484 U.S. 29, 37-38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987))).[1] But the Board has recently jettisoned this standard. It now appears to defer to the arbitrator’s CBA interpretation only if “Board law reasonably permits” it. Babcock & Wilcox Constr. Co., 361 N.L.R.B. No. 132, 2014 WL 7149039, at *11 (Dec. 15, 2014).[2] If the “Board law” standard in fact replaces the old one, it presents the paradox of a Board decision “against deferring to an arbitrator’s award” in a setting “when a federal court would have been obliged to enforce” it. See Utility Workers, 39 F.3d at 1216 (forewarning of paradox). If the Board applies its new standard, “both an arbitrator’s award and a conflicting Board order” could — inconsistently—be “enforced simultaneously in the federal courts.” Id.
If the Board continues to second guess the substance of the arbitrator’s CBA interpretation as opposed to, say, only his choice of remedy, the paradox will become inevitable. To me, it is plain that the Board’s inquiry whether “Board law reasonably permits” an interpretation is irreconcilable with our review of whether the arbitrator dispensed his “own brand of industrial justice.” Id. When the time comes, I believe the Board will have to explain why we should accord its decision any deference when it fails to defer to an arbitrator’s conclusion, to which our “extraordinarily deferential standard,” Nat’l Postal, 589 F.3d at 441, must be applied. See BP Amoco Corp. v. NLRB, 217 F.3d 869, 873 (D.C. Cir. 2000) (court applied de novo review to labor contract, rejecting Board’s interpretation); accord Litton, 501 U.S. at 203, 111 S.Ct. 2215 (“We would risk the development of conflicting principles were we to defer to the Board in its interpretation of the contract, as distinct from its devising a remedy for the unfair labor practice that follows from a breach of contract. We cannot accord deference in contract interpretation here only to-revert to our independent interpretation of collective-bargaining agreements in a case arising under [the LRMA].”).[3]

. The standard also furthers one goal of the Labor Relations Management Act (LRMA), 29 U.S.C. §§ 141 et seq., by which the Congress established that "[f]inal adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective bargaining agreement,” 29 U.S.C. § 173(d); see also United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) ("A major factor in achieving [the federal policy of] industrial peace is the inclusion of a provision for arbitration of grievances in the collective bargaining agreement.”).

. Parenthetically, it is not plain what "Board law” in fact bears on contract interpretation. See Litton Pin. Printing Div. v. NLRB, 501 U.S. 190, 201, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991) ("[T]he Board is neither the sole nor the primary source of authority in [contract interpretation]. Arbitrators and courts are still the principal sources of contract interpretation.” (internal quotation marks omitted)); Honeywell Int’l, Inc. v. NLRB, 253 F.3d 119, 124 (D.C. Cir. 2001) (“[T]he Board may interpret a contract 'only so far as necessary to determine’ what statutory rights the party has given up by agreeing to a particular contract.” (quoting NLRB v. C & C Plywood Corp., 385 U.S. 421, 428, 87 S.Ct. 559, 17 L.Ed.2d 486 (1967))).

.My colleagues conclude that we may "overturn the Board's decision only if the Board abused its discretion (that is, acted unreasonably) in failing to afford the required deference.” Maj. Op. 488; see also Dissent Op. 491 (same). Granted, we ordinarily review the Board's application of its arbitration deferral standard in this manner. See Am. Freight Sys. Inc. v. NLRB, 722 F.2d 828, 832 (D.C. Cir. 1983). But here the Board was engaged in *491 contract interpretation, see Maj. Op. 488 (discussing whether Board may "read a contract term differently than the arbitrator read it."), and we have said time and again that we accord the Board no deference when it is so engaged. See, e.g., McDonnell Douglas Corp. v. NLRB, 59 F.3d 230, 234 (D.C. Cir 1995) ("courts owe no deference to the Board in its interpretation” of CBA (internal quotations omitted)); Int’l Union of Painters & Allied Trades v. NLRB, 309 F.3d 1, 3 (D.C. Cir. 2002) ("Board interpretations of the CBA ... receive no deference”). My colleagues make no attempt to reconcile these conflicting standards; as we must ensure that "[a]rbitrators and courts" — not the Board — remain "the principal sources of contract interpretation,” Litton, 501 U.S. at 201, 111 S.Ct. 2215, however, it seems plain to me that "the normal deference we must afford the Board’s policy choices does not apply in this context," Enloe Med. Ctr. v. NLRB, 433 F.3d 834, 837 (D.C. Cir. 2005) (emphasis added), i.e., when the Board reinterprets a contract under its arbitration deferral standard, our abuse of discretion approach should yield.