**AMERICAN FREIGHT SYSTEM, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

**Philip O. McArthur, Southern Conference of Teamsters, Intervenors.**

**No. 82–2243.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 30, 1983.

Decided Nov. 29, 1983.

R. F. Beagle, Jr., Kansas City, Mo., with whom Mary M. Cracraft, Kansas City, Mo., was on the brief for petitioner.

Elinor Hadley Stillman, Atty., N.L.R.B., Washington, D.C., for respondent. Elliott Moore, Deputy Associate Gen. Counsel, Jonathan Saperstein, Atty., N.L.R.B., Washington, D.C., were on the brief, for respondent.

Paul Alan Levy and Alan B. Morrison, Washington, D.C., were on the brief for intervenor, McArthur.

L.N.D. Wells, Jr. and G. William Baab, Dallas, Tex., were on the brief for intervenor, Southern Conference of Teamsters.

* The Honorable David W. Williams, United States District Judge for the Central District of California, sitting by designation pursuant to 28 U.S.C. § 292(d).

1. 29 U.S.C. §§ 151–169 (1976). Section 8(a)(1) provides:

It shall be an unfair labor practice for an employer—

Before EDWARDS and SCALIA, Circuit Judges, and WILLIAMS,* District Judge.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

In this case, we review a decision of the National Labor Relations Board (the "NLRB" or "Board") determining that American Freight System, Inc. committed an unfair labor practice in violation of section 8(a)(1) of the National Labor Relations Act [1] (the "NLRA") by firing Philip McArthur for refusing to drive a truck that he believed was unsafe. Prior to the Board's consideration of this matter, McArthur pursued a contract grievance claim, under a collective bargaining agreement between American Freight and the Southern Conference of Teamsters, over precisely the same question that was subsequently presented to the NLRB. After hearing the case pursuant to the collective bargaining agreement, the authorized Grievance Committee acted unanimously to deny McArthur's claim as unmeritorious.

In reaching its decision, the Board declined to defer to the Grievance Committee decision on the grounds that the statutory unfair labor practice claim may not have been considered by the Committee. The Board then theorized that, because his refusal to drive the assigned truck was an attempt to enforce a provision of the collective bargaining agreement, McArthur was engaged in protected concerted activity under the NLRA. The Board ordered American Freight to reinstate McArthur with full back pay and to discontinue its unfair labor practices.

American Freight filed a petition in this court for review of the Board's order. The

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section [7] of this [Act].
29 U.S.C. § 158(a)(1). Section 7 provides in part:
Employees shall have the right ... to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection ....
*Id.* § 157.

Board cross-petitioned for enforcement. We conclude that the Board abused its discretion in failing to defer to the Grievance Committee decision upholding McArthur's discharge. Accordingly, we decline to enforce the Board's order.

## I. BACKGROUND

Prior to his discharge, Philip O. McArthur was employed by American Freight as a truck driver. On May 29, 1980, McArthur refused to drive his assigned truck because the steering axle tires were "General" brand; he claimed that he had been told eleven days earlier by an outside mechanic that the General brand tires could be unsafe if put on the steering axle. In response to McArthur's complaint, two different Union mechanics inspected the truck and reported that the tires were safe. In addition, one of the two Union stewards who was summoned by the terminal manager to intervene in the dispute, advised McArthur to drive his assigned truck; the second steward testified that he gave no advice because he felt that McArthur had already made up his mind. Nonetheless, McArthur continued to refuse to drive the truck, and he was dismissed.

It is undisputed that when McArthur refused to drive his assigned truck on May 29, he did so solely out of an alleged concern for his own personal safety. At no time did he assert any safety interest on behalf of anyone other than himself. He did not attempt to warn his fellow employees that the truck was unsafe to drive, and it appears that the truck was taken out on a run that same day by another employee. Furthermore, there is nothing in the record to indicate that the truck or its tires were *in fact* unsafe; indeed, all evidence points to the opposite conclusion and, also, to a conclusion that McArthur had reason to know that the truck was not unsafe. *At most,* there is evidence to suggest that McArthur may have personally believed that the tires were unsafe despite the clear indications to the contrary.[2]

McArthur filed a grievance with the Union on June 9, 1980. He alleged that American Freight discharged him in violation of article 16 of the collective bargaining agreement, which protects an employee's right to refuse to operate equipment "unless such refusal is unjustified."[3] On June 24, 1980, the Southern Multi-State Grievance Committee, composed of three employer members and three Union members, conducted a full hearing on McArthur's grievance.[4] McArthur was represented by the Union and was given an unfettered right to present evidence to the Committee. Following the grievance hearing, the Committee sustained McArthur's discharge, finding no breach of the applicable terms of the contract. App. 371.

McArthur then filed an unfair labor practice charge on June 30, 1980, alleging that his discharge was a violation of section 8(a)(1) of the NLRA. After an administra-

---

**2.** Neither the Board nor the Administrative Law Judge found that the truck or its tires were unsafe. In fact, the Board proceeded on an assumption that "McArthur's belief that the tires were unsafe need not have been correct, but must only have been reasonable and held in good faith." 264 N.L.R.B. No. 18 (Sept. 27, 1982), slip op. at 6, *reprinted in* Appendix ("App.") 424, 429. The Board properly acknowledged, however, that the "good faith" test that it invoked was patently inconsistent with the applicable contractual standard. Slip op. at 5, *reprinted in* App. 428. In other words, the Board recognized that, "in denying McArthur's claim and upholding the discharge, the arbitrators must have ruled under article 16 of the contract that the tires were in fact not unsafe and, therefore, McArthur's refusal to drive the truck was 'unjustified.'" *Id.*

**3.** National Master Freight Agreement, eff. 4–1–79 to 3–31–82, Article 16, *reprinted in* App. 317.

**4.** Neither party has objected to the Grievance Committee decision on the basis of the Committee's bipartite nature. Although Board member Jenkins would refuse to defer to the Grievance Committee decision because the Committee lacked a neutral member, slip op. at 4 n. 6, *reprinted in* App. 427 n. 6, we note that bipartite committee grievance resolution procedures and decisions have been upheld as equivalent to arbitration. *See General Drivers, Warehousemen & Helpers v. Riss & Co.,* 372 U.S. 517, 519, 83 S.Ct. 789, 791, 9 L.Ed.2d 918 (1963) (per curiam); *Bloom v. NLRB,* 603 F.2d 1015, 1021 (D.C.Cir.1979).

tive hearing, the Administrative Law Judge ("ALJ") held that McArthur was engaged in protected concerted activity within the meaning of section 7 of the NLRA when he refused to drive his assigned truck and, therefore, that American Freight violated section 8(a)(1) of the NLRA by terminating him. App. 416–17. The ALJ refused to defer to the arbitration decision because the Grievance Committee might not have considered the statutory unfair labor practice issue in reaching its decision. App. 418 n. 10. *See also* note 2 *supra.*

The Board upheld the decision of the ALJ. *American Freight System, Inc.,* 264 N.L.R.B. No. 18 (Sept. 27, 1982), *reprinted in* App. 424. *See* note 2 *supra.* American Freight then filed a petition for review with this court on October 18, 1982. The Board cross-petitioned for enforcement. McArthur intervened in support of the Board, while the Southern Conference of Teamsters intervened in opposition to the Board in order to support the contractual grievance process and the decision of the Grievance Committee.

## II. ANALYSIS

American Freight raises two objections to the Board's decision. First, it asserts that the Board abused its discretion in failing to defer to the Grievance Committee decision. Second, it argues that McArthur was not engaged in protected concerted activity when he refused to drive his assigned truck.

### A. *Deference to the Decision of the Grievance Committee*

American Freight's principal—and most compelling—argument is that the Board improperly failed to defer to the Grievance Committee decision upholding McArthur's discharge for refusing to drive his truck. Under established NLRB precedent, the Board routinely defers to arbitration decisions when (1) the contractual proceedings appear to have been fair and regular; (2)

all parties have agreed to be bound; (3) the decision under the contract is not clearly repugnant to the purposes and policies of the Act; and (4) the unfair labor practice issue before the Board has been "both presented to and considered by the arbitrator." *See Spielberg Manufacturing Co.,* 112 N.L.R.B. 1080, 1082 (1955) (establishing first three requirements); *Suburban Motor Freight, Inc.,* 247 N.L.R.B. 146, 146–47 (1980) (adding fourth requirement).[5] In this case, the Board contends that the fourth deference requirement was not met. We find this contention to be wholly untenable.

The Board's argument is based on its view that this case involves both a contractual issue and a distinct statutory unfair labor practice issue, and that it is unclear whether the Grievance Committee considered the latter. The contractual issue is whether McArthur was "justified" in refusing to drive his assigned truck within the meaning of article 16 of the collective bargaining agreement. In the Board's view, the statutory issue is whether McArthur had a reasonable and good faith belief that his truck was unsafe at the time he refused to drive it. *See* note 2 *supra.* According to the Board, if McArthur had a "good faith" belief that his truck was unsafe, his refusal to drive constituted protected concerted activity under the Board's *Interboro* doctrine. *See NLRB v. Interboro Contractors, Inc.,* 388 F.2d 495, 500 (2d Cir.1967) (single employee engaged in concerted activity when attempting to enforce terms of collective bargaining agreement). The Board correctly assumed that the Grievance Committee was not bound to apply a subjective "good faith" test in considering McArthur's claim under the contract. *See* note 2 *supra.* In light of this assumption, the Board reached the specious conclusion that "to assume that the arbitrators fully considered and applied the proper standards in resolving both [the contractual and statutory] issues 'goes beyond deferral and approaches abdication.' "

---

**5.** The Board actually adopted this fourth requirement in *Raytheon Co.,* 140 N.L.R.B. 883 (1963), but later revoked it in *Electronic Reproduction Service Corp.,* 213 N.L.R.B. 758 (1974).

*Electronic Reproduction* was overruled in *Suburban Motor Freight, Inc.,* 247 N.L.R.B. 146 (1980).

Slip op. at 7, *reprinted in* App. 430 (quoting *Banyard v. N.L.R.B.,* 505 F.2d 342, 348 (D.C. Cir.1974)).

 The obvious fallacy in the Board's analysis is its contention that there is a statutory issue apart from the contractual issue. This analytical flaw is born of the Board's total failure to consider contractual waiver doctrine. It is well settled that a union may lawfully waive statutory rights of represented employees in a collective bargaining agreement. *See Metropolitan Edison Co. v. NLRB,* —— U.S. ——, 103 S.Ct. 1467, 1476, 75 L.Ed.2d 387 (1983). Although the NLRA protects an employee's right to strike, for example, no-strike clauses in collective bargaining agreements have been uniformly upheld. *See Mastro Plastics Corp. v. NLRB,* 350 U.S. 270, 280, 76 S.Ct. 349, 356, 100 L.Ed. 309 (1956); *Fournelle v. NLRB,* 670 F.2d 331, 335–36 (D.C. Cir.1982). In this case, whatever statutory right McArthur may have had to refuse to drive his truck based on his "good faith" belief that it was unsafe was clearly and unmistakably waived by article 16 of the collective bargaining agreement, which dictates that his refusal must be "justified." As the Board itself recognized, the applicable contract provision rejects any reliance on "good faith" belief as a justification for an employee refusal to perform assigned work. This case, therefore, involves solely a contractual claim, not an unfair labor practice claim. *See Kohls v. NLRB,* 629 F.2d 173, 179 (D.C.Cir.1980), *cert. denied,* 450 U.S. 931, 101 S.Ct. 1390, 67 L.Ed.2d 363 (1981). In other words, assuming, *arguendo,* that an individual employee has a right under the NLRA to refuse to work in order to pursue a contract claim that is not in fact "justified" but only supported by a "good faith" belief of wrongdoing, that alleged right was waived by the collective bargaining agreement in this case.

The contractual issue in this case—whether McArthur was justified in refusing to drive his truck—was fully considered and decided by the Grievance Committee. The Board may not substitute its own interpretation of article 16 for that of the Grievance Committee. *NLRB v. C & C Plywood Corp.,* 385 U.S. 421, 427–28, 87 S.Ct. 559, 563–64, 17 L.Ed.2d 486 (1967). Indeed, the Board does not even purport to dispute the finding of the Grievance Committee that McArthur's work refusal was unjustified. *See* note 2 *supra.* In light of contractual waiver doctrine, there is no statutory issue to be decided in this case; and because the Grievance Committee fully considered and decided the contractual issue, all four deference requirements were satisfied.

 Although the Board has considerable discretion in deciding whether to defer to an arbitration decision, a failure to follow its own standards of deference is an abuse of that discretion. *NLRB v. Motor Convoy, Inc.,* 673 F.2d 734, 736 (4th Cir. 1982) (Board must defer to private arbitration which complies with *Spielberg* requirements); *Liquor Salesmen's Union Local 2 v. NLRB,* 664 F.2d 318, 326 (2d Cir.1981) (same), *cert. denied,* 456 U.S. 973, 102 S.Ct. 2236, 72 L.Ed.2d 847 (1982). *See also NLRB v. Joseph Magnin Co.,* 704 F.2d 1457, 1460 (9th Cir.1983). In this case, where the Grievance Committee's decision satisfied all of the Board's deference requirements, the Board abused its discretion in failing to defer to that decision.

Moreover, the Board's decision in this case is an unexplained reversal of its prior decision to defer in *United Parcel Service, Inc.,* 232 N.L.R.B. 1114 (1977), *aff'd, Bloom v. NLRB,* 603 F.2d 1015 (D.C.Cir.1979). In *Bloom,* as here, an employee refused to drive a truck he believed to be unsafe, was fired for that refusal, filed a grievance protesting his discharge as a violation of his rights under a collective bargaining agreement provision identical to the one at issue here, presented evidence to a bipartite grievance panel supporting his claim that his refusal to drive the truck was "justified", and suffered an adverse decision by the grievance panel. 232 N.L.R.B. at 1114. An ALJ considered Bloom's subsequent unfair labor practice claim and held that Bloom's refusal to drive the truck was protected concerted activity under the NLRA because Bloom had acted on the reasonable

belief that the truck was unsafe. The Board, however, held that the ALJ erred in failing to defer to the grievance panel's decision, and accordingly dismissed Bloom's complaint. *Id.* at 1115. This court affirmed the Board's decision to defer because we agreed that all deference requirements had been satisfied. We observed that the "basic question in both the contractual and statutory settings was the same: was Bloom justified *under the contract* to refuse to operate" his assigned truck. *Bloom v. NLRB,* 603 F.2d 1015, 1020–21 (D.C.Cir. 1979) (emphasis added).

It is difficult to comprehend why the Board refused to defer to the Grievance Committee decision in this case when it deferred in *Bloom* under nearly identical facts. The Board's only explanation for its changed position is that *Bloom* was decided before the Board established its fourth deference requirement in *Suburban Motor Freight;* thus, the Board claims that it did not analyze whether the "statutory issue" in *Bloom* was presented to and considered by the grievance panel. This argument is entirely unpersuasive and must fail. In *Bloom* we clearly held, as we do today, that there was no statutory issue apart from the contractual issue. As we said in *Bloom,* the contractual and statutory issues are congruent, hinging on "factual considerations relating to the safety of the tires on the tractor, and *Bloom's* contractual rights and obligations with respect thereto." 603 F.2d at 1021. Because the factual and contractual issues had been fully resolved by the grievance panel, the Board correctly deferred to the grievance panel's decision in *Bloom.* The Board should have deferred to the Grievance Committee decision in this case for the same reasons.

Deference to the arbitration process promotes "the Act's aims of minimizing industrial strife and promoting industrial stability." *Kohls v. NLRB,* 629 F.2d 173, 178 (D.C.Cir.1980), *cert. denied,* 450 U.S. 931, 101 S.Ct. 1390, 67 L.Ed.2d 363 (1981). Allowing the Board to disregard its own deference policy, which has been reinforced by long-standing and consistent case precedent, would undermine the careful development of the *Spielberg* standards of deference, discourage parties from relying on their own bargaining agreements and procedures, and "significantly undermin[e] the value and efficacy of arbitration as an alternative to the judicial or administrative resolution of labor disputes." *Liquor Salesmen's Union Local 2 v. NLRB,* 664 F.2d 318, 327 (2d Cir.1981), *cert. denied,* 456 U.S. 973, 102 S.Ct. 2236, 72 L.Ed.2d 847 (1982). In sum, the Board abused its discretion in this case by failing to defer to the Grievance Committee decision.

### B. Protected "Concerted Activity"

Having decided that the Board abused its discretion by failing to defer to the Grievance Committee decision, we need not decide whether McArthur's individual refusal to drive his truck constituted "concerted" activity under the Board's *Interboro* doctrine. Even assuming that McArthur was engaged in concerted activity, that activity was not protected under section 7 of the NLRA because McArthur's alleged statutory right to refuse to drive the truck based on his good faith belief that it was unsafe was waived by article 16 of the collective bargaining agreement.

We have previously expressed some doubts as to the validity of the *Interboro* doctrine, *Kohls v. NLRB,* 629 F.2d 173, 177 (D.C.Cir.1980), *cert. denied,* 450 U.S. 931, 101 S.Ct. 1390, 67 L.Ed.2d 363 (1981), and have declined to enforce a decision of the Board finding concerted activity in a case factually similar to this one. 629 F.2d at 175. Nevertheless, we need not and do not rely on any statements of reservation about the *Interboro* doctrine made in *Kohls.* The instant case may be decided easily under *Spielberg* and applicable waiver doctrine, without reference to the *Interboro* question. Furthermore, since the Supreme Court only recently heard arguments on the validity of the *Interboro* doctrine,[6] it would be pre-

---

**6.** *See City Disposal Systems, Inc. v. NLRB,* 683 F.2d 1005 (6th Cir.1982) (per curiam) (finding

no concerted activity when employee refused to drive truck he believed was unsafe because

sumptuous and inappropriate for us to anticipate the Court's judgment on the matter.

### III. CONCLUSION

Because the Board abused its discretion by failing to defer to the Grievance Committee decision upholding McArthur's discharge, we deny enforcement of the Board's order.

*So ordered.*

employee asserted no interest on behalf of anyone other than himself and Union did not protest use of truck), *cert. granted,* —— U.S. ——, 103 S.Ct. 1496, 75 L.Ed.2d 928 (1983).