Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 15, 2004        Decided November 30, 2004

No. 03-1345

TITANIUM METALS CORPORATION,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

Consolidated with
03-1410

On Petition for Review and Cross-Application
for Enforcement of an Order of the
National Labor Relations Board

*George E. Yund* argued the cause and filed the briefs for petitioner Titanium Metals Corporation.

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Kira D. Vol,* Attorney, argued the cause for respondent. With her on the brief were *Arthur F. Rosenfeld,* General Counsel, *John H. Ferguson,* Assistant General Counsel, *Aileen A. Armstrong,* Deputy Associate General Counsel, and *Robert J. Englehart,* Attorney. *David A. Fleischer,* Senior Attorney entered an appearance for respondent.

Before: EDWARDS and RANDOLPH, *Circuit Judges,* and WILLIAMS, *Senior Circuit Judge.*

Opinion for the Court filed by *Circuit Judge* EDWARDS.

EDWARDS, *Circuit Judge:* In a decision issued on September 30, 2003, the National Labor Relations Board ("Board" or "NLRB") held that Titanium Metals Corporation ("TIMET") violated § 8(a)(1) of the National Labor Relations Act ("NLRA" or "ACT"), 29 U.S.C. § 158(a)(1) (2000), when the company first issued a warning, then suspended, and finally discharged employee David W. Smallwood in May 1999 for poor work performance, failing to cooperate in a related investigation, distributing a newsletter, and encouraging other employees at TIMET to call him during working hours. The Board also found that TIMET violated § 8(a)(1) of the Act by denying Smallwood's request for union representation during an interview regarding his discipline and by maintaining and enforcing an overly broad no-solicitation/no-distribution rule.

The Board's decision on the disputed disciplinary actions rests principally on its findings that Smallwood's publication and distribution of a newsletter constituted "protected concerted activity" under § 7 of the Act, 29 U.S.C. § 157; that TIMET was motivated to discipline Smallwood because of his publication and distribution of the newsletter in 1999; and that Smallwood's publications did not lose the protection of the Act, because the cited articles did not disparage the employer, advocate violence, recklessly disregard the truth, or include material that was maliciously false.

In reaching this decision, the Board declined to defer to a grievance settlement reached by TIMET and the United Steelworkers of America, Local 4856, AFL-CIO ("Union")

under their collective bargaining agreement. The Union had pursued a grievance to challenge the grounds of the disciplinary actions taken against Smallwood. Following deliberations between TIMET and Union officials, the parties entered into a Letter of Understanding in which they agreed that Smallwood was properly dismissed for "insubordination, inappropriate conduct toward the Company and supervisory employees, ongoing and costly workmanship related infractions, [and] providing misleading and inaccurate information related to melting incident investigations," and that Smallwood "was not discharged for engaging in protected activities under the NLRA." The Board specifically refused to accept a finding by the Administrative Law Judge ("ALJ") that the parties' grievance settlement was "repugnant to the purposes and policies of the Act." The Board nonetheless declined to defer to the parties' grievance settlement, because, in the Board's view, the Letter of Understanding failed to satisfy the applicable standards of fairness and regularity. *See Spielberg Mfg. Co.*, 112 N.L.R.B. 1080, 1082 (1955); *Alpha Beta Co.*, 273 N.L.R.B. 1546, 1547 (1985), *petition for review denied sub nom. Mahon v. NLRB*, 808 F.2d 1342 (9th Cir. 1987).

TIMET petitions for review of the Board's decision and the NLRB cross-applies for enforcement of its order. TIMET does not challenge the Board's findings that it violated § 8(a)(1) by questioning Smallwood in the absence of a Union representative and by maintaining and enforcing an overly broad no-solicitation/no-distribution rule. Instead, TIMET contends that the Board misapplied established law in refusing to defer to a settlement reached by TIMET officials and Smallwood's union representatives, where the settlement was reached pursuant to the parties' lawful grievance procedures, Smallwood had no right under the agreement to approve a grievance settlement, the Board declined to endorse the ALJ's finding that the parties' settlement was "palpably wrong" or otherwise "clearly repugnant" to the purposes and policies of the Act, and there is no claim that the Union breached its duty of fair representation. We hold that, under these circumstances, the Board clearly erred in declining to defer to the settlement agreement between TIMET and the

Union. In light of this holding, the Board's holding that TIMET violated § 8(a)(1) in disciplining Smallwood is vacated and TIMET's challenge to that holding is dismissed as moot.

## I. BACKGROUND

TIMET, a Delaware corporation, is engaged in the fabrication of titanium metal ingots at its Henderson, Nevada facility. At all times relevant to this case, TIMET and the Union were parties to a collective bargaining agreement that covered production and maintenance employees. *See Titanium Metals Corp.*, 340 N.L.R.B. No. 88 (Sept. 30, 2003), slip op. at 1, 4, *reprinted in* Joint Appendix ("J.A.") 355, 355, 358, *available at* 2003 WL 22295370. The collective bargaining agreement provided for a four-step grievance-arbitration procedure. At step one, an aggrieved employee, or Union representatives acting on the employee's behalf, could discuss the matter with the employee's foreman or supervisor. If a grievance was "not adjusted to the satisfaction of the Union in Step 1," the Union had the option of presenting the grievance in writing to the Human Resources Manager and attempting to resolve it with the department manager at the second step of the grievance procedure. Collective Bargaining Agreement Between Titanium Metals Corporation and United Steelworkers of America (1996), ¶ 11:19, J.A. 237. If a grievance remained unresolved, the Union had the option of proceeding to step three, which involved a written appeal to the Human Resources Manager. Under the agreement, a "representative of the Union shall have the authority to settle or withdraw any Union grievance in Step 3." *Id.* ¶ 11:20, J.A. 238. Finally, if a grievance was unresolved after step three, the Union could appeal the matter to arbitration. *Id.* ¶ 11:22, J.A. 238. The agreement did not require the Union to consult with, or obtain approval from, an aggrieved employee before settling a grievance or deciding whether to appeal a matter to arbitration.

Smallwood began working for TIMET in July 1994. Beginning in October 1996, Smallwood was employed as a furnace operator in the melt department. *Titanium Metals*, slip op.

at 4, J.A. 358. From May 1997 through November 1997, and again in late March and May 1999, Smallwood published a newsletter, which he distributed to approximately 20 of TI-MET's melt department employees at their homes and to the Union at its office. The newsletter was widely read and circulated in the melt department. *Id.* The Board found that "[t]he newsletter was usually about six pages long and contained articles of general interest as well as those dealing with wages, hours, and working conditions at the Henderson facility, many of which were critical of supervisors and [TI-MET's] labor-management policies." *Id.*

On December 22, 1997, TIMET issued a written warning to Smallwood for violating the company's harassment-free workplace policy based on his written and verbal comments. In response to the warning, Smallwood stopped disseminating the newsletter until late March 1999, when he published a new edition. Smallwood received another written warning on May 25, 1999. The May 25 warning stated that Smallwood was being disciplined for: (1) poor work performance, including a May 18, 1999 incident in which he allegedly damaged an ingot, (2) the manner in which he responded to the investigation of that incident, (3) distributing the newsletter, and (4) encouraging fellow employees to call him during work hours. *See id.*, slip op. at 5-6, J.A. 359-60.

Smallwood published the final edition of the newsletter at about the same time when he received the May 25 warning. On May 26, employee relations supervisor Alan Gines and another supervisor, Max Frederick, met Smallwood when he arrived at work and brought him to the office of melt division supervisor Vinoo Kamdar. There, Gines informed Smallwood that he was suspended pending termination. By letter dated June 8, 1999, TIMET converted Smallwood's suspension to a discharge effective May 26, 1999. *Id.*, slip op. at 6-7, J.A. 360-61.

Pursuant to the procedures in the collective bargaining agreement between TIMET and the Union, Smallwood's discharge was the subject of a grievance that reached step three on July 22, 1999. *Id.*, slip op. at 7, J.A. 361. Following their

deliberations over Smallwood's grievance, TIMET and the Union finally resolved the matter in a "Letter of Understanding" dated February 15, 2000. The grievance settlement provided, as follows:

> Mr. Smallwood was *not* discharged for engaging in protected concerted activities under the NLRA. The Company recognizes the Union's rights to communicate with represented employees, to post notices and other related Union materials on plant bulletin boards as outlined in the collective bargaining agreement, and to engage in all other legally protected rights and activities, including, but not necessarily limited to, the NLRA.... The Company's reasons for discharging Mr. Smallwood included issues such as insubordination, inappropriate conduct toward the Company and supervisory employees, ongoing and costly workmanship related infractions, providing misleading and inaccurate information related to melting incident investigations, etc.

Letter of Understanding of 2/15/00, J.A. 349. On March 8, 2000, the Union sent Smallwood a letter advising him that a "decision has been made that no further action will be taken, pertaining to the grievance, filed on your behalf regarding your discharge from employment at Titanium Metals Corporation." Letter from Jerry Storms to David Smallwood of 3/8/00, J.A. 350. Although Smallwood did not have a copy of the parties' settlement agreement, he knew then that his grievance would not be appealed to arbitration.

While the Union was pursuing Smallwood's grievance, Smallwood filed an unfair labor practice charge against TIMET with the NLRB on July 2, 1999. He amended his charge on August 9, 2000. The Board's Regional Director issued a complaint on August 24, 2000. *Titanium Metals*, slip op. at 4, J.A. 358. Neither Smallwood's charge nor the Board's complaint claimed that the Union's representation of Smallwood during the grievance processing was in any way suspect or inadequate. Amended Charge, 8/9/00, J.A. 192-93; Complaint and Notice of Hearing, 8/24/00, J.A. 195-200.

After trying the case in Las Vegas, Nevada from January 16-19, 2001, the ALJ issued a decision on March 30, 2001. The ALJ determined that Smallwood's publication of the newsletter in 1999 constituted protected concerted activity under § 7 of the NLRA. The ALJ also concluded that nothing in the subject matter of the newsletters caused them to lose their protection under § 7, because the articles did not disparage TIMET, advocate violence, or involve false statements made maliciously or with reckless disregard for the truth. Because the ALJ found that TIMET was motivated to discipline Smallwood because of his publication of a newsletter in 1999, the ALJ held that TIMET committed unfair labor practices in violation of NLRA § 8(a)(1) by interfering with Smallwood's exercise of his § 7 rights. *See Titanium Metals*, slip op. at 7-9, J.A. 361-63. The ALJ further ruled that TIMET violated § 8(a)(1) by questioning Smallwood during the May 26 discharge meeting in the absence of a Union representative after Smallwood had requested representation, and by having promulgated and enforced an overly broad no-distribution/no-solicitation rule. *Id.*, slip op. at 9-10, J.A. 363-64.

In concluding that TIMET's discipline of Smallwood violated § 8(a)(1), the ALJ declined to defer to the Letter of Understanding between TIMET and the Union settling Smallwood's grievance. The ALJ purported to rely on *Alpha Beta Co.*, 273 N.L.R.B. 1546 (1985), *petition for review denied sub nom. Mahon v. NLRB*, 808 F.2d 1342 (9th Cir. 1987), in which the Board extended the deferral principles of *Spielberg Mfg. Co.*, 112 N.L.R.B. 1080 (1955), to grievance settlements. *Alpha Beta*, 273 N.L.R.B. at 1547. As noted by the Board in this case, under *Spielberg* and *Alpha Beta*, the Board will defer to a grievance settlement when: (1) the grievance proceedings were fair and regular, (2) all parties agreed to be bound, and (3) the results of the settlement are not clearly repugnant to the purposes and policies of the NLRA. *See Titanium Metals*, slip op. at 2, J.A. 356 (citing *Spielberg*, 112 N.L.R.B. at 1082; *Alpha Beta*, 273 N.L.R.B. at 1546). The ALJ found that, because Smallwood was dismissed for engaging in protected concerted activity, the Letter of Understand-

ing was "palpably wrong" and, therefore, the settlement was "repugnant to the principles and policies of the Act." *Id.*, slip op. at 10, J.A. 364.

The Board affirmed the ALJ's findings of § 8(a)(1) violations and also agreed with the ALJ that deferral to the Letter of Understanding between TIMET and the Union was inappropriate. *See id.*, slip op. at 1, J.A. 355. The Board assumed that the Letter of Understanding was a settlement agreement to which it might defer under *Alpha Beta*. However, the Board refused to endorse the ALJ's finding that the settlement agreement was clearly repugnant to the purposes and policies of the Act. Rather, the Board held that "the process that resulted in the 'Letter of Understanding' was not fair and regular and, accordingly, failed to satisfy the standard for deferral." *Id.*, slip op. at 2, J.A. 356.

The Board cited two considerations in reaching its conclusion that the settlement agreement was not fair and regular. First, the Board noted that the existence of the Letter of Understanding was not promptly disclosed to Smallwood. Second, the Board stated that the reasons cited in the Letter of Understanding in support of Smallwood's discharge deviated from those given Smallwood when he was terminated. According to the Board, "[i]n the absence of any explanation from [TIMET] or the Union for this deviation, the 'Letter of Understanding' appears to be an attempt to disguise the real reason for the discharge: Smallwood's protected, concerted activity of distributing a newsletter that addressed employment conditions and employment-related matters." *Titanium Metals*, slip op. at 2, J.A. 356. The Board did not find that the substantive terms of the settlement were unlawful; nor did it find that the Union breached its duty of fair representation to Smallwood.

TIMET filed the present petition for review of the Board's decision, and the Board cross-applied for enforcement of its order. TIMET does not challenge the Board's findings that TIMET violated § 8(a)(1) by questioning Smallwood in the absence of a union representative during the May 26 interview with Gines and by maintaining an overly broad no-solicitation/no-distribution rule. Therefore, the Board is enti-

tled to summary enforcement of these findings. *See Int'l Union of Petroleum & Indus. Workers v. NLRB*, 980 F.2d 774, 778 n.1 (D.C. Cir. 1992).

## II. ANALYSIS

### A. *Standard of Review*

Judicial review of NLRB determinations in unfair labor practice cases is generally limited, but not so deferential that the court will merely act as a rubber stamp for the Board's conclusions. *Pa. State Educ. Ass'n-NEA v. NLRB*, 79 F.3d 139, 148 (D.C. Cir. 1996). Board orders will not survive review when the Board's decision has no reasonable basis in law or when the Board has failed to apply the proper legal standard. *See, e.g.*, *NLRB v. McClatchy Newspapers, Inc.*, 964 F.2d 1153, 1156 (D.C. Cir. 1992) (Edwards, J., concurring). A Board's decision will also be set aside when it departs from established precedent without reasoned justification, *see, e.g.*, *Pittsburgh Press Co. v. NLRB*, 977 F.2d 652, 655 (D.C. Cir. 1992), or when the Board's factual determinations are not supported by substantial evidence, *see Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 366 (1998). Finally, if the Board fails to follow or misapplies its own standards in deciding whether to defer to a grievance settlement, the Board's decision will be set aside as an abuse of discretion. *See Plumbers & Pipefitters Local 520 v. NLRB*, 955 F.2d 744, 750 (D.C. Cir.) (setting forth abuse of discretion standard of review), *cert. denied*, 506 U.S. 817 (1992). *See also Am. Freight Sys., Inc. v. NLRB*, 722 F.2d 828, 832 (D.C. Cir. 1983) ("Although the Board has considerable discretion in deciding whether to defer . . . a failure to follow its own standards of deference is an abuse of that discretion.").

### B. *The Board's Deferral Policy and Its Application to this Case*

#### 1. *The Parties' Letter of Understanding was a Settlement Agreement Subject to* Alpha Beta

This case requires us to examine whether the Board abused its discretion in declining to defer to the Letter of Under-

standing between TIMET and the Union. Before reaching this question, however, we must first address whether the Letter of Understanding constituted a settlement agreement subject to analysis under *Alpha Beta*. The Board merely assumed this without deciding the matter. This is of no moment, however, because we accord no deference to the Board's interpretations of labor contracts. *BP Amoco Corp. v. NLRB*, 217 F.3d 869, 873 (D.C. Cir. 2000).

We have reviewed the Letter of Understanding and conclude that it is a valid settlement agreement. Therefore *Alpha Beta* applies. The Board refused with good reason to adopt the ALJ's finding that the settlement agreement was repugnant to the Act, for there is nothing legally impermissible in the terms of the agreement. The record is also clear that the agreement was properly executed by TIMET and Union officials pursuant to the terms of their lawful collective bargaining agreement. And both parties received consideration under the settlement agreement: TIMET secured disciplinary action against Smallwood and, as Board counsel conceded, "[t]he Union got a reaffirmation of its rights." Br. for NLRB at 39. Therefore, we conclude that the Letter of Understanding constitutes a settlement agreement between TIMET and the Union to which the Board must apply the deferral standards of *Alpha Beta*.

2. *The* Alpha Beta *Deferral Policy*

As noted above, the Board declared in *Alpha Beta* that it will defer to grievance settlements when: (1) the proceedings appear to have been fair and regular; (2) all parties agree to be bound; and (3) the agreement is not palpably wrong – meaning it is not clearly repugnant to the purposes and policies of the NLRA. *See Alpha Beta*, 273 N.L.R.B. at 1547. The Board noted a fourth consideration in *United States Postal Serv.*, 300 N.L.R.B. 196, 198 (1990), namely, whether the parties to a grievance settlement considered the unfair labor practice issue in reaching their agreement. This fourth consideration is not at issue here, as there is no dispute that the parties' Letter of Understanding meets this prong of the Board's deferral test.

The *Alpha Beta* deferral policy was upheld by this court in *Plumbers*, 955 F.2d at 751-52. The *Plumbers* decision noted that,

> [b]y recognizing the validity and finality of [pre-arbitration grievance] settlements, the Board promotes the integrity of the collective bargaining process, thereby effectuating a primary goal of the national labor policy.

*Id.* at 752. Fostering the integrity of the collective bargaining process clearly advances the purposes of the NLRA, and the Labor Management Relations Act, 29 U.S.C. §§ 141-144, 171-187 (2000), because these laws "are designed to protect both individual and collective rights, and have as their paramount goal the promotion of labor peace through the collective efforts of labor and management." *Hammontree v. NLRB*, 925 F.2d 1486, 1502 (D.C. Cir. 1991) (en banc) (Edwards, J., concurring).

In short, the Board's policy of deferring to grievance settlements is supported by two simple and related policy determinations: First, "[t]he Board found that the application of deferral principles to such settlements would further the policy favoring private resolution of labor disputes." *Postal Serv.*, 300 N.L.R.B. at 197. Second, when contract grievance disputes implicate statutory rights that are "waiveable" pursuant to collective bargaining, it is appropriate to accede to arrangements reached by the bargaining parties. *See Metro. Edison Co. v. NLRB*, 460 U.S. 693, 705 (1983) ("This Court long has recognized that a union may waive a member's statutorily protected rights. . . ."); *id.* at 707 n.11 ("the National Labor Relations Act contemplates that individual rights may be waived by the union so long as the union does not breach its duty of good-faith representation"); *Energy Coop., Inc.*, 290 N.L.R.B. 635, 636 (1988) (relying on *Metropolitan Edison* for the proposition that a union may waive a member's statutorily protected rights).

There is no doubt that employee discipline of the sort implicated in this case falls within the compass of waiveable rights that are subject to collective bargaining and grievance

settlements. *See Fournelle v. NLRB*, 670 F.2d 331, 335 (D.C. Cir. 1982) ("An employee's section 7 rights to engage in concerted activities ... are neither unqualified nor absolute.... [C]ertain rights granted by section 7 may be waived pursuant to collective bargaining."); *Postal Serv.*, 300 N.L.R.B. at 197 (in cases involving employee discipline, "a union can waive employees' statutory rights" and employees are bound by the terms of settlement agreements negotiated by their bargaining representative). The Board does not suggest otherwise. Therefore, the only issue here is whether the Board abused its discretion in declining to defer in this case, where the disputed settlement was reached pursuant to the parties' lawful grievance procedures, Smallwood had no right under the agreement to approve a grievance settlement, the Board specifically refused to endorse the ALJ's finding that the parties' settlement was "palpably wrong" or otherwise "clearly repugnant" to the purposes and policies of the Act, and there is no claim that the Union breached its duty of representation. For the reasons indicated below, we hold that, in these circumstances, the Board clearly erred in declining to defer to the settlement agreement between TIMET and the Union.

3. *Application of the Board's Deferral Policy in this Case*

As noted above, the Board rested its decision *solely* on the "fair and regular" prong of *Alpha Beta*. The Board offered two reasons to justify its conclusion that the settlement agreement between TIMET and the Union was not fair and regular. First, the Board noted that "the existence of the [settlement] agreement was never disclosed to [Smallwood] by the Union or the [employer]." *Titanium Metals*, slip op. at 2, J.A. 356. Second, the Board found that, "although the 'Letter of Understanding' recites several reasons for Smallwood's discharge – including 'insubordination, inappropriate conduct toward the company ... [and] providing misleading and inaccurate information ...' – these reasons were not the explanation given to Smallwood when he was discharged." *Id.* Neither explanation justifies the Board's conclusion that the parties' settlement agreement failed the "fair and regular" prong of *Spielberg* and *Alpha Beta*.

The Board first stresses that the Letter of Understanding was never disclosed to Smallwood. This is perplexing, for, in the context of this case, this fact is utterly innocuous. Smallwood knew he had been terminated; he knew that the Union did not settle the grievance on terms that were favorable to him; and he knew that the Union did not appeal the case to arbitration. In other words, he was clearly on notice of the fact that TIMET and the Union had resolved his grievance without providing him any of the remedies he had requested. He was free to ask his Union agent about the terms upon which his grievance was settled, but he did not do this. And the Board does not suggest that the Union withheld any materials related to Smallwood's grievance to which he was entitled under the collective bargaining agreement.

More importantly, it is legally irrelevant that Smallwood was not notified that the Union and TIMET had executed a Letter of Understanding with regard to his claims. Absent specified rights under a collective bargaining agreement, bargaining unit employees have no right to participate in contract grievance proceedings. *See Plumbers*, 955 F.2d at 753-54. Indeed, recognizing that a union is the collective-bargaining agent of individual employees, the Board has made it clear that it will defer to grievance settlements even when a grievant objects to the settlement. *See Postal Serv.*, 300 N.L.R.B. at 197. The Board acknowledges that a union can settle an employee's grievance over his objection, but argues that this case should be treated differently, because Smallwood was not informed of the precise terms of the settlement agreement between the Union and TIMET. *Titanium Metals*, slip op. at 2, J.A. 356; Br. for NLRB at 37-38. This is a specious argument. Even if Smallwood had been notified of the precise details of the settlement, he could have done nothing to change it. The employer and union are the parties to the collective bargaining agreement and only they – not individual employees – determine how to interpret and enforce the agreement. In short, as we stated in *Plumbers*: "Absent a breach of the duty of fair representation, the [union is] empowered to bind [the individual employee] to the result obtained through the grievance process." 955 F.2d at 753.

The second factor the Board relied on in declining to defer in this case was that the reasons recited in the Letter of Understanding for Smallwood's discharge differed from the explanation given Smallwood when he was discharged. Assuming this is true, it does not support the Board's conclusion that the settlement agreement was not fair and regular. The Union and TIMET were well within their rights to negotiate over Smallwood's grievance under the contract grievance procedures and decide whether, and on what terms, Smallwood should be terminated. *See* Collective Bargaining Agreement, ¶¶ 11:19, 11:20, J.A. 237-38. Indeed, Board counsel acknowledged at oral argument that, if an arbitrator had upheld the termination of Smallwood for the same reasons relied upon in the Letter of Understanding, the Board probably would not have concluded that the arbitration process was unfair or irregular. Recording of Oral Argument at 21:20-:45.

There is nothing in the record to suggest that the grounds recited in the Letter of Understanding supporting Smallwood's discharge – *i.e.*, insubordination, inappropriate conduct, workmanship related infractions, and making misleading statements during the investigation of workplace accidents – were factually unsupportable. *See, e.g.*, Tr. of ALJ Hearing at 589-90, J.A. 184-85 (testimony that Smallwood was responsible for a workplace overmelt and that Smallwood lied about what happened). And, as noted above, the Board does not assert that the Union breached its duty of fair representation to Smallwood in reaching the settlement. Therefore, the fact that the explanation for Smallwood's termination in the Letter of Understanding differed from the reasons given Smallwood when he was discharged did not make the settlement agreement unfair or irregular. The Letter or Understanding was the lawful product of collective bargaining between company and union representatives.

At oral argument before the court, in an effort to defend the Board's decision, Board counsel suggested that this case "didn't smell right." Recording of Oral Argument at 28:36. But when counsel was pressed to explain what smelled bad about the case, she could identify nothing that provides a

legal justification for the Board's refusal to defer to the settlement agreement. As we noted in *Plumbers*, "since a union has broad discretion to alter or modify employees' 'waiveable' rights through collective bargaining, *see Metropolitan Edison Co.*, 460 U.S. at 705-07, 103 S.Ct. at 1475-77, we see no basis upon which the Board legitimately could intervene merely because the settlement reached by the union and the employer was not to the Board's liking." *Plumbers*, 955 F.2d at 757.

What is clear here is that Board does not have discretion to abandon its established deferral policies and act on whim. As we said in *American Freight*,

> [a]llowing the Board to disregard its own deference policy, which has been reinforced by long-standing and consistent case precedent, would undermine the careful development of the *Spielberg* standards of deference, discourage parties from relying on their own bargaining agreements and procedures, and "significantly undermin[e] the value and efficacy of arbitration as an alternative to the judicial or administrative resolution of labor disputes."

*Am. Freight*, 722 F.2d at 833 (quoting *Liquor Salesmen's Union Local 2 v. NLRB*, 664 F.2d 318, 327 (2d Cir. 1981) (alteration in *Am. Freight*)). The same analysis holds true here.

There is no basis under established law justifying the Board's conclusion that the disputed Letter of Understanding violated the first prong of the *Spielberg/Alpha Beta* deferral doctrine. What is "fair and regular" under the first prong of *Alpha Beta* must be measured by reference to the parties' collective bargaining agreement, not by reference to the Board's abstract sense of what is right. It is clear in this case that the parties acted pursuant to a lawful grievance procedure and faithfully adhered to the terms of their collective bargaining agreement in processing Smallwood's grievance; the resulting settlement agreement was not repugnant to the Act; and the Union did not violate its duty of fair representation. It defies reason to hold that a grievance

settlement reached in these circumstances is unfair or irregular. The Board's contrary conclusion was an abuse of discretion.

### III. Conclusion

TIMET's petition for review of the Board's order is granted in part and denied in part. The Board's cross-application for enforcement of its order is granted in part and denied in part. For the reasons stated above: (1) the Board's order is enforced insofar as it finds that TIMET violated § 8(a)(1) by questioning Smallwood in the absence of a Union representative and by maintaining and enforcing an overly broad no-solicitation/no-distribution rule; (2) TIMET's petition challenging the Board's decision declining to defer to the Letter of Understanding between TIMET and the Union is hereby granted; and (3) the Board's holding that TIMET violated § 8(a)(1) in disciplining Smallwood is vacated, TIMET's challenge to that holding is dismissed as moot, and the Board's cross-application for enforcement of the order relating to these § 8(a)(1) charges is denied.

*So ordered.*